IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JESSICA MOUNCE, Individually,
and On Behalf of All Other
Similarly Situated Plaintiffs                                    **PLAINTIFF**

**V.**                                              **CASE NO. 5:15-cv-05197-TLB**

CHSPSC, LLC, a Delaware Corporation,
NORTHWEST ARKANSAS HOSPITALS, LLC,
a Delaware Limited Liability Company
d/b/a NORTHWEST MEDICAL CENTER;
PROFESSIONAL ACCOUNT SERVICES, INC.,
A Tennessee Corporation                                      **DEFENDANTS**

<u>**REPRESENTATIVE PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES,
AND CLASS REPRESENTATIVE SERVICE AWARD**</u>

## I.   INTRODUCTION

On May 29, 2018, the Court entered an Order granting preliminary approval of the class

settlement and directing that notice be provided to the class.  Pursuant to the Court's Order, the

individuals identified as being potential members of the certified class were provided direct mail

notice, which informed them how to file a claim, opt out of the settlement and/or file an objection.

The deadline for class members to file claims ended on August 27, 2018.[1]  Class Counsel is now

in a position to report the results of the notice process and request entry of final approval of the

Class Settlement.

---

[1] The deadline for requesting exclusion or objecting to the settlement ended on August 13, 2018.

## II.   THE LITIGATION

As the Court is aware, this case has a long and contentious history. The case was originally filed in Washington County Arkansas on June 3, 2015. Defendants removed the case to this Court on or about August 8, 2015 and filed an Answer on August 21, 2015. Rule 26 disclosures were organized and provided to all of the Parties throughout the summer of 2015. Defendants compiled and provided information regarding patients that may be part of the defined class with their Rule 26 disclosures.

On October 7, 2015, Defendants filed a Motion to Compel Arbitration. Plaintiff filed her opposition to the Motion on October 26, 2015, and Defendants filed a Reply in Support on October 30, 2015. The Court held oral arguments on the Motion on November 3, 2015 and issued an order denying the Motion on December 22, 2015.

Following the Court's denial of the Motion to Compel Arbitration, discovery proceeded without delay. Ms. Mounce was deposed on January 28, 2016. Ms. Mounce filed a First Amended Complaint on February 4, 2016. Defendants deposed Ms. Mounce's attorney for her auto accident claims on March 31, 2016 and the Corporate Representative for George's (the employer regarding the ERISA health plan at issue for Ms. Mounce) on or about March 16, 2016. Plaintiff's Counsel deposed the corporate representatives of Northwest Medical Center as well as corporate representatives from PASI and CHSPSC in Nashville. Plaintiff deposed the corporate representative for Blue Cross in Little Rock on August 2016.

Concurrent with the depositions, parties conducted extensive written discovery with interrogatories and document production throughout the summer and fall of 2016. Defendants filed a Motion for Summary Judgment on September 1, 2016 and Ms. Mounce filed her opposition to the motion on September 29, 2016. Ms. Mounce also filed a Motion for Class Certification on

September 1, 2016 and Defendants filed their opposition on October 5, 2016. Ms. Mounce filed a Reply to Defendants' opposition on October 19, 2016.

The Court heard oral argument on both Summary Judgment and Class Certification on November 3, 2016 with argument lasting over 3 hours. On September 29, 2017, the Court denied summary judgement and granted class certification. Following the certification of the Class, counsel for Ms. Mounce submitted a proposed Class Notice to be sent to every Class Member. The Court approved the Notice on November 3, 2017 and issued a revised Case Management Order setting trial for July 2018. Defendants compiled and produced revised and updated information regarding patients that may be part of the defined class. The parties then began settlement discussions that resulted in the Settlement Agreement that was presented to this Court for Preliminary Approval. The Court granted Preliminary Approval on May 29, 2018 and directed that the approved Notice be provided to the Class.

## III.   THE PROPOSED SETTLEMENT

1.   The Settlement Class.

In its Order granting Plaintiff's Motion for Preliminary Approval, the Court certified a Class defined as:

> All Arkansas residents who, since April 30, 2010 through October 31, 2017, received any type of healthcare treatment from any entity located in Arkansas that is owned, controlled, managed and/or affiliated with Defendants, and: (i) such treatment was covered by valid, in network, commercial health coverage; (ii) the billing charges regarding such treatment were not timely submitted to the commercial health carrier; and (iii) Defendants obtained payments for such treatment as a result of asserting third-party medical liens, submitting claims for medical payments coverage, and/or seeking payment directly from the patients.

2.   Settlement Terms:

The terms of the settlement allowed each member of the defined class to submit a claim and obtain a payment that is a substantial proportion of each member's alleged damages.

An agreed upon Settlement payment will be issued to each claimant who timely filed a claim that is a valid claim, which excludes any audited claim that does not qualify for payment as set forth in Section V. C of the Settlement Agreement. Defendant will establish a Settlement Fund in an amount of $2,234,829.00 , which will be used to pay all valid claims, notice costs, and expenses, as well as attorney fees and an incentive award. At the end of the Claims Period, which ran through August 28, 2018, the Claims Administrator will submit a report to counsel identifying all timely submitted claims. Pursuant to Section V. C. of the Settlement Agreement, Defendants will have thirty (30) days to identify any claims they contend do not qualify for payment. If counsel are unable to agree on the validity of any claims, those claims shall be resolved in accordance with the dispute resolution provisions within Section XI.L of the Settlement Agreement, which provides that an agreed-upon neutral third party will decide such dispute. Any fees or costs relating to the services of the neutral third party shall be divided evenly between Defendants and Class Counsel.

A. **Settlement Amount**. Defendants have agreed to a Settlement Fund of $2,234,829.00, inclusive of all benefits provided for Class Members ("Settlement Amount[2]"). The Settlement Amount shall be apportioned as follows:

1. Plaintiff Jessica Mounce is requesting an Incentive Award of $7,500.00 for her service as Class Representative;

2. Class Counsel is seeking Court approval of payment of attorneys' fees and expenses representing approximately 33 and 1/3 percent of the Settlement Fund, for a total amount of $744,868.00. Defendants do not object to this request;

3. All Costs of Claims Administration shall be deducted from the Settlement Fund and Defendants shall not be responsible for any of those costs. These costs are estimated to be $10,000.00, but the Settlement Agreement is not limited to such estimate;

4. The remaining portion of the Settlement Amount ("Payout Amount") shall be utilized to provide Participating Claimants their respective Valid Claim amount. The Paid Claims will be paid only upon a "claims made" basis. Each Participating

---

[2] Capitalized terms as used herein are defined in the Settlement Agreement.

Claimant having a Valid Claim will be paid 77% of their respective Valid Claim amount. Should the total amount of payments attributable to Valid Claims exceed the Payout Amount, payments to Participating Claimants with Valid Claims will be proportionally distributed and in no event shall exceed the Payout Amount; and

5. Any amount remaining after payment of the Costs of Claims Administration, attorneys' fees and expenses, the Incentive Payment, and all Valid Claims, shall be retained by Defendants.

All eligible Class Members who filed valid claims and who did not exclude themselves from the Settlement will receive a Settlement Payout as set forth in the Settlement Agreement. The Settlement Payout corresponds to the amount of funds the Defendants obtained as a result of asserting third-party medical liens, submitting claims for medical payments coverage, and/or seeking payment directly from Class Members.

## IV. The Court-Approved Notice Program Was Effective and Satisfied Constitutional Requirements.

Where a class has been certified under Fed. R. Civ. P. 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). "[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010). This standard is met in the present matter.

For all Class Members, notice was sent directly to the last known address of the Class Member. This notice was sent by first class mail. Any notices returned as undeliverable were run through various address update services and resent if another address was located. Upon receiving

5

notice, Class Members could receive telephone support to answer any questions. Class Members could file a claim on a dedicated web site or call to request a paper claim form which could be submitted by mail *See* Exhibit 1, affidavit of Dahl, Inc.

Notice need only be made by the "best practicable" means. Because the Class Members with known addresses received individual, mailed notices to their last known addresses discovered through diligent investigation, the Class Members clearly received the best notice practicable. *See Grunin v. International House of Pancakes,* 513 F. 2d 114 (8th Cir. 1975), *cert denied,* 423 U.S. 864, 96 S. Ct. 124 (1975).

The Notice Program was developed and implemented by Dahl Administration, one of the most respected class action notice providers in the country. As summarized herein and explained in detail in the Declaration of Kimberly K. Ness, Notice was provided in accordance with the Court-approved Notice Program. *See* Exhibit 1. Pursuant to the Notice Program, Dahl Administration provided direct mail notice to every class member based on addresses and information provided by Defendants.

Notice was also posted on the settlement website. The settlement website allowed Settlement Class members to view information about the Settlements, including copies of the Detailed Notice, Settlement Agreements, and Preliminary Approval Order. The settlement website also contained important dates, answers to frequently asked questions, and contact information for the Claims Administrator. By visiting the settlement website, Settlement Class Members could also view and file a claim.

This Court approved the long-form and short-form notices in its Preliminary Approval Order. Notices were mailed to 858 individuals and reached over 93.82% of them. The adequacy of the notice and the success of the Settlement are shown by the fact that 42.89% of the noticed

6

individuals submitted a claim. The claims rate is higher than the normal expected range of claims in similar cases as the normal claims rate can be from 4-7% and sometimes much lower. Additionally, there were only 3 requests for exclusion and no objections filed. *See* Exhibit 1.

The Notice Program, with its extensive and thorough efforts to reach as many potential class members as possible, provided the Settlement Class with the best notice practicable under the circumstances.

## V.   FINAL APPROVAL OF THE SETTLEMENTS IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *In re Charter Commc'ns Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at \*4 (E.D. Mo. June 30, 2005) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (internal citation and quotations omitted).

Fed. R. Civ. P. 23(e) requires judicial approval of class action settlements. Courts in this Circuit analyze the following *Van Horn* factors to determine whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Huyer v. Njema*, No. 16-1484, 2017 WL 461096, at \*3 (8th Cir. Feb. 3, 2017) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Analysis of these factors demonstrates that the Settlement should be approved.

**A. The Merits of the Plaintiff's Case Weighed Against the Terms of the Settlements.**

"The most important consideration in the analysis requires balancing the strength of the plaintiffs' case against the value of the settlement terms to the class." *Marshall v. Nat'l Football League*, 787 F.3d 502, 514 (8th Cir. 2015). In cases such as this matter where damages are not easily calculable, courts are not required to calculate the value of class claims. *Id.* at 518. As the Eighth Circuit explained:

> To require the district court to make detailed factual findings on the value of class claims in every case, even if it would ultimately find any of its findings of little value to evaluating the fairness, reasonableness, and adequacy of the settlement would run counter to this Court's guiding principle that "[t]he very purpose of compromise is to avoid the delay and expense of such a trial," *Grunin*, 513 F.2d at 124 (internal quotation marks omitted) and that "[t]he parties to a class action are not required to incur immense expense before settling as a means to justify that settlement." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir.1995).

*Marshall*, 787 F.3d at 518. Balancing the risks of continued litigation against the immediacy and certainty of the significant recovery provided by the Settlements supports that the Settlements should be granted final approval.

Plaintiff and Co-Lead Settlement Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But, they also recognize the substantial risks involved in continuing this litigation. Defendants have aggressively maintained their position regarding liability and damages. They deny each.

The Court is aware of the extent and vigor of the litigation to date. Defendant has contested liability and alleged damages at every turn and likely would appeal many of the decisions should a trial go against them. The Defendants litigated the class certification issues, the extent of the class claims, and whether the Lien Statute, the contract with the health insurance provider, and/or other law permitted the Defendants to take the actions they had taken. Similar cases have been in

litigation with varying results, so the end result of this case was uncertain, and Defendants were prepared to vigorously defend against the claims of the Plaintiff at trial and on appeal.

Class Counsel were mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Defendants assert that the Arkansas Hospital Lien law allows a hospital to file a lien against a third-party tort recovery. Defendants further assert that they are not required by their contracts with the various third-party health insurance companies to submit a patient's medical bills to health insurance when there has been an auto accident. Defendants also claim that any payments made in this case as a result of their lien practices were done so voluntarily and therefore Plaintiff, and the other Class Members are barred from seeking recovery. Although Co-Lead Class Counsel believe Plaintiff and the Class would prevail on such arguments, they also recognize the difficulties and risks of continuing litigation through summary judgment and trial.

The Settlement, in contrast, delivers a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal. The Settlement provides that Settlement Class Members who submit a valid claim will receive money back that was paid to Defendants by auto insurance or as a result of a third-party recovery. The Settlement provides substantial benefits in contrast to the possibility of no relief should the claims of Representative Plaintiff be denied.

See In re Zurn Pex Plumbing Prods. Liab. Litig., 08-MDL-1958 ADM/AJB, 2013 WL 716088 at *7 (D. Minn. Feb. 27, 2013) ("The critical consideration is the strength of plaintiffs' case on the merits versus the amount offered in the settlement."); see also Grant v. Capital Mgmt. Servs., L.P., No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery

by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush") (internal citations and quotations omitted).

With a $2,234,829.00 settlement fund available to provide benefits, when compared to the risks of continued litigation, demonstrates that the recovery under the terms of the Settlement Agreement is extremely fair and reasonable. Thus, this factor supports final approval of the Settlement.

### B. The Defendants' Financial Condition.

Defendants are successful and profitable business entities and have been in business for many years. The parent corporation of Defendants is a highly profitable organization owning and operating many different hospitals. There is no question but that Defendants have sufficient resources to satisfy all terms of the Settlement Agreement. As such this factor favors final approval of the Settlement. *See Marshall*, 787 F.3d at 512.

### C. The Complexity and Expense of Further Litigation.

Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Defendants assert that the Arkansas Hospital Lien law allows a hospital to file a lien against a third-party tort recovery. Defendants further assert that they are not required by their contracts with the various third-party health insurance companies to submit a patient's medical bills to health insurance when there has been an auto accident. Defendants also claim that any payments made in this case as a result of their lien practices were done so voluntarily and therefore Plaintiff, and the other Class Members are barred from seeking recovery. Although Co-Lead Class Counsel believe Plaintiff and the Class would prevail on such arguments, they

also recognize the difficulties and risks of continuing litigation through summary judgment and trial.

The Settlement, in contrast, delivers a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal. The Settlement provides that Settlement Class Members who submit a valid claim will receive money back that was paid to Defendants by auto insurance or as a result of a third-party recovery. The Settlement provides substantial benefits in contrast to the possibility of no relief should the claims of Representative Plaintiff be denied.

Prosecuting this litigation through trial and appeal would be lengthy, complex, and extremely costly to all parties. *See Marshall*, 787 F.3d at 512 ("Class actions, in general, place an enormous burden of costs and expense upon parties.") (citation and quotations omitted); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, continued fact discovery, class certification proceedings, further dispositive motions, trial, and appeal. Defendants would almost certainly appeal all Court rulings that went against them and that have not been waived. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay, as it would require briefing and likely oral argument. Based on all of these issues, this factor favors final approval of the Settlement.

### D. The Amount of Opposition to the Settlements.

The Settlement was extraordinarily well received by Settlement Class Members. Not a single objection to the Settlements was filed, and only 3 class members requested to be excluded from the Settlements.  Moreover, 42.89% of the noticed individuals filed a claim.  Given the expansive and effective Notice Program, the lack of opposition to the Settlement and the exception claims filing rate strongly supports final approval.

As illustrated herein, through an analysis of the factors outlined by the Eighth Circuit Court of Appeals, the Settlement is fair, reasonable, and adequate and meets all standards for final approval. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

## VI. CO-LEAD SETTLEMENT CLASS COUNSEL'S FEE REQUEST IS REASONABLE.

Class Counsel is applying to the Court for an aggregate award of attorney's fees, litigation expenses, and court costs in the amount of $744,868.00.  Class Counsels fees were agreed to between the Parties after good faith, arm's length negotiations and Defendants have agreed not to object to this request.

This circuit has adopted the percentage of the common fund approach when deciding attorney fees. *Harris v. Republic Airlines* 1991WL 238992 (D.Minn.) at pg. 2, "An award of attorneys' fees is committed to the discretion of the trial court." *H.J., Inc. v. Flygt Corp.,* 925 F.2d 257, 259 (8th Cir.1991). "The Court finds the percentage of common fund approach to be appropriate in this case, and awards to class counsel $1,000,000 in attorneys' fees, a sum slightly in excess of 30% of the common fund."

"We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this, *see Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1157 (8th Cir.1999), and we find no abuse of discretion in the district court's awarding 36% to class counsel who obtained significant monetary relief on behalf of the class..." *In re US Bancorp Litigation*

291 F.3d 1035,1038 (8th Cir. 2002). The common fund doctrine allows a court to award attorney's fees from the common fund that is created for the satisfaction of class members' claims when a class action reaches settlement or judgment. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164, 59 S. Ct. 777, 83 L. Ed. 1184 (1939) (holding that the authority to award fees from the common fund stems from the "historic equity jurisdiction of the federal courts").

The doctrine is grounded in the principles of quantum meruit and unjust enrichment in two ways. First, the doctrine prevents unjust enrichment of absent members of the class at the expense of the attorneys. It is meant to compensate the attorneys in proportion to the benefit they have obtained for the entire class (the fund), not just the representative members with whom they have contracted. *See Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973) (holding the attorney entitled to funds under the equitable fund doctrine because he "conferred a benefit on all the class members, (one or more of whom) agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them").

Second, the doctrine prevents the unjust enrichment of absent class members at the expense of the class representatives. *See Brytus v. Spang & Co.*, 203 F.3d 238, 242, 24 Employee Benefits Cas. (BNA) 1006 (3d Cir. 2000) (stating that the doctrine, "'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense'"), *quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676, Fed. Sec. L. Rep. (CCH) ¶97279 (1980); *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973) (noting that the class representative can claim "that by instituting the suit he has performed a service benefiting

other class members. The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class."). In the absence of the doctrine, only the present members, who hired the attorneys, would have to pay attorney's fees, while all the members, both absent and present, would enjoy the benefits of the settlement or judgment. The members who did not hire the attorneys would be unjustly enriched at the expense of those who did.

A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured. Usually, 50 percent of the fund is the upper limit on a reasonable fee award from a common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented. *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D. N.Y. 1979), judgment aff'd, 622 F.2d 1106, 6 Fed. R. Evid. Serv. 214 (2d Cir. 1980) (approximately 53% of settlement fund awarded). *See also Greene v. Emersons Ltd.*, Fed. Sec. L. Rep. (CCH) ¶93263, 1987 WL 11558 (S.D. N.Y. 1987) (securities) (46.2% of common fund awarded).

Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery. *See McNeely v. National Mobile Health Care, LLC*, 2008 WL 4816510 at *15 (W.D. Okla. 2008) (quoting *Newberg on Class Actions*) (certifying a class of nursing home residents who had allegedly been deceived by the defendant insurance company, and preliminarily approving the settlement and fee request of plaintiffs' counsel, pending a full fairness hearing); *In re Top Tankers, Inc. Securities Litigation*, 2008 WL 2944620 at *13 (S.D. N.Y. 2008) (quoting *Newberg on Class Actions*) (approving settlement and attorney's fees agreement).

A fee award of 33 1/3% is common and well within the normal range of awards from a

14

common fund.   Moreover, the requested fee is equal to or below what courts in this Circuit commonly award in common fund cases. *Petrovic,* 200 F.3d at 1158(24%);*In re U.S. Bancorp,* 291 F.3d 1035 (8th Cir.2002) (36%); *Engineering Animation* (33%); *IBP, Inc.* (28%). *In re Monosodium Glutamate Antitrust Litig.,* 2003 WL 297276 at *3 (D.Minn. Feb. 6, 2003) (awarded class counsel 30% of the $81.4 million settlement fund after costs and expenses); *KK Motors v. Brunswick Corp.,* No. 98-2307, Order and Judgment (D. Minn. filed Mar. 6, 2000) ( awarded one-third of the $30 million settlement fund.); *In re LaserMaster Technologies, Inc. Sec. Litig.,* No. 4-95-631, Order (D.Minn. Oct. 10, 1997) (awarded class counsel one-third of the settlement fund). *In re Charter Communications Inc. Securities Litigation v. Charter Communications Inc.* 2005 WL 4045741 (E.D.Mo.) p.13.

Here, it is undisputed that Class Counsel was successful in securing a common fund for the class of $2,234,829.00.   The case was vigorously litigated with Plaintiff obtaining class certification and defeating Defendants' summary judgment motion.   A normal contingency fee agreement in the local area can range from 33 1/3 to 50%.   Based on the nature and difficulty of the case and the results achieved, Class Counsel requests a fee award at the low end of normal and request an award that is approximately 33 and1/3 percent of the common fund.

The 8th  Circuit has also established factors that a court could examine in determining a fee award. *Allen v. Tobacco Superstore, Inc.,* 475 F.3d 931 (8th Cir. 2007), *relying on, Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

### 1.   The Time and Labor Required, the Difficulty of the Questions Involved, and the Skill Required to Litigate the Case.

The record of this case amply establishes the significant time and labor required to litigate a case of this nature. Since the initiation of this litigation in June 2015, Plaintiffs researched numerous unique issues pertaining to the litigation; conducted several depositions of Defendants' corporate representatives as well as other corporate representatives and individuals; propounded and responded to extensive written discovery requests; analyzed numerous documents; briefed numerous motions and responses including Plaintiff's Motion for Class Certification, Defendants' Motion for Summary Judgment and Defendants' Motion to Compel Arbitration. Class Counsel has also expended significant time negotiating and working on settlement, drafting and finalizing the Settlement Agreement, drafting and finalizing the short form notice, long form notice, claim form and the Motions for Preliminary and Final Approval.

The record equally establishes that this case presented difficult questions, several of which have not been addressed by any other Court applying Arkansas law, and which required commensurate skill to litigate the case properly.

During the claims process alone, Plaintiff's Counsel spent nearly fifty hours answering direct phone calls from Class Members to explain aspects of the lawsuit and the claims process and to help Class Members file claims online or on paper.

### 2.   The Experience, Reputation, and Ability of the Attorneys.

The firms involved in this litigation have the experience, reputation, and ability to litigate complex class cases. As set forth in Plaintiff's Motion for Preliminary Approval. Co-Lead

Class Counsel involved in this litigation have significant experience in mass tort and class action litigation.

### 3.   The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case.

The efforts of Co-Lead Class Counsel in the management of this Class Action necessarily infringed upon the time and opportunity they would have had available to accept other employment. The reality of complex cases is that work is not easily shifted to other attorneys in a firm not familiar with the matter, with the result that substantially less time becomes available to Co-Lead Class Counsel to attend to other matters. Time and energy devoted to this litigation necessarily limited the time and energy available for other litigation.

### 4.   The Customary Fee: Awards in Similar Cases.

An action of this complex nature is a "make or break" venture for which compensation should bear a reasonable relationship to the success of the venture when compared to the risks undertaken, particularly in the legal atmosphere for plaintiff lawyers in a class action context. It is also significant that the amount sought comports with the standard fees in the marketplace. *See, e.g., In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."). The requested fee amount, in terms of percentage, is standard and routine in cases in this circuit. Thus, the requested fee is entirely appropriate and within the range of those typically awarded.

### 5.   Whether the Fee is Fixed or Contingent.

This case was prosecuted by Class Counsel on a purely contingent basis, thereby assuming the risk of no payment for a considerable amount of work over an extended period of time. Thus, the contingency risk in this case was substantial. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *In re Sunbeam,* 176 F. Supp. 2d at

1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd, 899

F.2d 21 (11th Cir. 1990)).  Co-Lead Class Counsel spent considerable time advancing this case

without any compensation for their time.  They did so without knowing whether their time

would ever be compensated.  In sum, this case presented great financial risk from its inception.

As the Court found in *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1339 (S.D. Fla.

2007):

> [A]ttorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee
> award. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir.2000) (citation
> omitted); *accord Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) ("Lawyers
> who are to be compensated only in the event of victory expect and are entitled to
> be paid more when successful than those who are assured of compensation
> regardless of result."); *see also Ressler v. Jacobson,* 149 F.R.D. 651, 656
> (M.D.Fla.1992) ("Numerous cases recognize that the attorney's contingent fee risk
> is an important factor in determining the fee award."); *Walters v. Atlanta,* 652
> F.Supp. 755, 759 (N.D.Ga.), modified, 803 F.2d 1135 (11th Cir.1986); *York v.
> Alabama State Bd. of Educ.,* 631 F.Supp. 78, 86 (M.D.Ala.1986).

Presumably, there is no greater risk than accepting, working, and advancing a case on a

pure contingency fee basis where Plaintiffs' Counsel assumed all of the risk.

**6.    The Amount Involved and the Results Obtained.**

The result achieved is a major factor to consider in making a fee award.  *Hensley v.

Eckerhart,* 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens,*

118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best

measured by the benefit obtained.").   Here, the results obtained well support Co-Lead Settlement

Class Counsel's fee request.

**7.    The Undesirability of the Case.**

"A court's consideration of this factor recognizes that counsel should be rewarded for

taking on a case from which other law firms shrunk. Such aversion could be due to any number of

things, including social opprobrium surrounding the parties, thorny factual circumstances, or the

possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'"

*In re Sunbeam,* 176 F. Supp. 2d at 1336. Here, not only was the financial outcome uncertain, but the representation involved bringing claims that were difficult and risky. Few counsel were willing to assume this representation, as evidenced by the fact that Defendants had been asserting liens on third party recoveries and refusing to submit valid health insurance for years and no other litigation or attempt to create compliance had been instituted despite vast knowledge among Plaintiff attorneys in Arkansas of Defendants' practices. This represents yet another factor warranting the requested award of fees, costs and expenses.

**8.     Time limitations imposed by the client or the circumstances.**

As the Court is well aware, this case has required substantial attention by various Co-Lead Class Counsel. Frequently, issues arose that required immediate attention and completion within a very short period of time, and Co-Lead Class counsel responded accordingly.

**9.     The nature and length of the professional relationship with the client.**

Ms. Mounce has been a client for over three years. She has actively participated in the litigation, including giving her deposition, and she was ready and available to help whenever and however needed. She was kept abreast of the developments throughout this litigation.

Thus, application of the *Johnson* factors supports an award of fees and costs to Co-Lead Settlement Class Counsel in the amount of $744,868.00, which is an amount that Defendant has agreed is reasonable.

Because of the myriad of issues involved in this litigation that have not been litigated before in Arkansas, the risk was even greater than a case with well-established law. For all the reasons set forth herein, Class Counsel's request is reasonable, fair, and consistent with established case

law. Thus, Class Counsel requests this Court approve an award of one-third (1/3) of the common fund, which is $744,868.00.

## VII. CONCLUSION

As the above analysis shows, this Settlement meets the standard for Final Approval. Accordingly, Plaintiff, individually and on behalf of the Settlement Class, by and through counsel, respectfully requests that this Court enter an order: (a) granting final approval of the Settlement, (b) awarding Co-Lead Settlement Class Counsel attorneys' fees, costs, and expenses in the amount of $744,868.00 (c) awarding Representative Plaintiff $7,500.00 and granting any other or additional relief as the Court may deem just and appropriate. Plaintiff respectfully requests that the Court enter an Order in substantially the form attached hereto as Exhibit 2.

Respectfully submitted,

By: /s/ Shawn B. Daniels
Shawn B. Daniels, AR Bar No. 99126
Sarah C. Jewell, AR Bar No. 2015169
Daniels Law Firm, PLLC
129 W. Sunbridge Drive
Fayetteville, AR 72703
(479) 521-7000
(479) 437-2007
shawn@danielsfirm.com
sarah@danielsfirm.com

Mitchell L. Burgess – admitted *Pro Hac Vice*
MO Bar No. 47524
Burgess Law Firm, P.C.
4310 Madison, Ste. 100
Kansas City, MO 64111
(816) 471-1700
(816) 471-1701 facsimile
mitch@burgesslawkc.com

Ralph K. Phalen – admitted *Pro Hac Vice*
MO Bar No. 36687
Ralph K. Phalen Law, P.C.
1000 Broadway St., Ste. 4500
Kansas City, MO  64105
(816) 589-0753
(816) 471-1701 facsimile
phalenlaw@yahoo.com

**ATTORNEYS FOR PLAINTIFF
AND CLASS**


## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Wright Lindsey & Jennings, LLP
3333 Pinnacle Hills Pkwy, Ste. 510
Rogers, Arkansas 72758
Gordon Rather, grather@wlj.com
Eric Berger, eberger@wlj.com
Gary Marts, Jr., gmarts@wlj.com
Attorneys for Defendants CHSPSC,
Northwest Medical Center and PASI


*/s/ Shawn B. Daniels*
**ATTORNEY FOR PLAINTIFF AND CLASS**